# Manus Bonner v. Pittsburgh Bridge Company, Appellant.

*Master and servant—Negligence—Defective machinery.*

A master is not bound to use the newest and best appliances, and the test of liability is not whether the employee has been exposed to danger but whether he has been so exposed through neglect to provide reasonably safe machinery. The test of reasonable safety is ordinary use.

*Defective machinery—Safety devise—Question for jury.*

Where an accident arose from the use by an employee of a crane so constructed as to be operated by either a slow or fast gear and where an accidental change of gear could be prevented by a safety lock, a device not expensive and well known, the question of the employer's negligence is for the jury, the testimony being conflicting as to the general use of the safety lock on similar cranes.

Argued May 6, 1897. Appeal, No. 168, April T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny County, Oct. Term, 1895, No. 732, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for personal injuries. Before EWING, P. J.

It appeared from the evidence that at the time of the injury complained of, Bonner, together with other employees of the Pittsburgh Bridge Company, was engaged in moving a large steel beam or girder from one position in the mill to another, through the agency of a large crane operated by means of hand power.

The mechanism of this crane was very simple, consisting of an upright beam, having two handles, one on each side of the drum, and a system of cogwheels, by means of which the power could be changed from fast to slow gear, and vice versa, as the exigencies of the work required.

In raising heavy materials, it is customary in the use of cranes of this character, to throw the power into slow gear, and in moving materials of light weight, to use the fast gear.

On the day of the accident, Bonner was detailed to work at this crane, which was located near the door of the mill and parallel with a narrow gauge tramway, upon which beams and other heavy material are moved from one position to another in

282        BONNER v. BRIDGE CO.

Statement of Facts—Opinion of the Court.   [5 Pa. Superior Ct.

and about the mill. Bonner was at the handle of the crane farthest away from this tram track, and had raised the steel girder, which they were engaged in moving, to the height desired, at which point he was holding the weight by means of the handle of the crane then in slow gear, preparatory to the girder being moved or shoved by his coemployees into the position desired.

It further appeared that by an accident the gear was suddenly shifted thus causing the injury complained of.

The contention of the plaintiff in the court below, was that the defendant company should have provided an additional device for the crane, which would prevent the power from being inadvertently changed from one gear to another while in operation.

Verdict and judgment for plaintiff for $600. Defendant appealed.

*Error assigned* was refusal of binding instructions.

*W. P. Potter* of *Stone & Potter*, for appellant.—If machinery be of an ordinary character, and such as can with reasonable care be used without danger, it is all that is required of the employer: Drew v. Coal Co., 3 Kulp, 207 ; Faber v. Mfg. Co., 126 Pa. 387 ; Railroad Co. v. Sentmeyer, 92 Pa. 276.

An employer is not bound to supply his employees with appliances not in general use : Coal Co. v. Hayes, 128 Pa. 294.

*John F. Miller*, with him *James F. Burke*, for appellee.—It is well-settled law that an employer must provide machinery, tools, and appliances which, with the exercise of ordinary care on the part of the employees, can be operated with safety: Faber v. Mfg. Co., 126 Pa. 387 ; Coal Co. v. Hayes, 128 Pa. 294; Brownfield v. Hughes, 128 Pa. 194; R. R. Co. v. Hughes, 119 Pa. 301.

OPINION BY ORLADY, J., July 23, 1897 :

The plaintiff recovered against the defendant a verdict of $600, as damages for injuries received in an accident which happened while he was at work for the defendant, in operating a large crane used for raising heavy articles. The machinery was so constructed as to be operated in either slow or fast gear, the change from one to the other being made by the operator of

the machine by means of a handle bar, while an accidental change of the gear could be prevented only by an appliance on the crane known as a safety lock, and the strain on the handle when in fast gear was about six times as much as when in slow gear. The plaintiff describes the injury as follows : " We done as directed, the girder was raised up by three men with the crane. Two of the men were called back to the fore end of the girder after the girder was raised up ; that left the crane to me. We had been directed to push the fore end in, of the girder, and when the girder was half way in, or you might call it cat-a-cornered, the hind end of the girder came in contact with the handle of the crane, and throwed her in fast speed, she takes action the other way and struck me square on the breast and doubled me up, and I have been doctoring ever since. The girder weighed ten to fourteen thousand pounds and was about fifty feet long. The end swung around on the other end from where I was standing and drove the crank along on its crank shaft from slow gear into fast gear."

The only material question at issue on the trial was whether or not the safety lock as described in the evidence was a usual and customary appliance on cranes of like character, to protect the employees. There was evidence that a safety lock was put on the next day by order of the superintendent. The testimony as to the general use of a safety lock on similar cranes in the neighborhood was conflicting, but all agreed that it was an inexpensive appliance, which when put upon the machine rendered its operation safe from risks, similar to the one resulting in plaintiff's injury.

In submitting the matter to the jury, they were carefully cautioned and instructed as follows : " Now it will be for you to say whether or not this safety lock was in general use, was well known,—was such an appliance as, under the circumstances, the defendant should have had on this crane, and whether they should have reasonably anticipated that an accident like this, in moving machinery,—moving large pieces of iron, was likely to occur ; that even with care on the part of the workmen it might be expected to occur and injure a workman ; whether or not this was a reasonable appliance, such as was reasonably required for the safety of the employees should have been adopted."

The only assignment of error is as to the refusal of the court

below to affirm the points submitted: First, Under all the evidence in this case the verdict should be for the defendant. Second, Under the pleadings and all the evidence in this case the verdict should be for the defendant; these were refused by the court, and the facts were properly submitted to the jury.

Was the crane, as arranged by the employer, reasonably safe for ordinary use by a careful employee? This was disputed, and the evidence was not so one-sided as to warrant the court in disposing of the disputed fact, by binding instructions.

All the cases agree that a master is not bound to use the newest and best appliances, and that the test of liability is not whether the employee has been exposed to danger, but whether he has been so exposed through neglect to provide reasonably safe machinery. The test of reasonable safety is ordinary use.

From the fact that a particular method or appliance is dangerous it does not follow that it is negligence for an employer to use it. Some employments are essentially hazardous; and the unbending test of negligence, in methods, machinery and appliances, is the ordinary usage of the business. "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for in regard to the style of the implement or nature of the mode of performance of any work, 'reasonable care' means according to the usages, habits and ordinary risks of the business."

It was not pretended that the work of the plaintiff was not done in a careful, workmanlike way: Titus v. R. R. Co., 136 Pa. 618, Ford v. Anderson, 139 Pa. 261, and Kehler v. Schwenk, 144 Pa. 348, are adopted in Keenan v. Waters & Son, 181 Pa. 247, and of binding authority on this court, but they do not conflict with the conclusion reached herein, under the facts.

The whole matter was properly left to the jury; and the judgment is affirmed.