# Pauza v. Lehigh Valley Coal Company, Appellant.

*Negligence—Damages—Mortality tables—Evidence—Capitalization of future payments.*

1. When mortality tables are introduced into evidence it is the duty of the trial judge to instruct the jury that the tables are not to be accepted as establishing the expectancy of the life of the injured party, but only as an aid in arriving at what that expectancy might be in view of all the conditions surrounding the particular life in question. Such conditions are to be considered as the party's prior state of health, character and habits, perils of employment, personal characteristics and other circumstances surrounding his own life.

2. When future payments are to be capitalized in a verdict, the plaintiff is only entitled to their present worth, and the jury should have such guidance from the court as will give them an intelligent understanding of what this means.

*Evidence—Hearsay—Cross-examination—Striking out evidence.*

3. Where a witness has testified that an act was done by a particular person, but on cross-examination admits that he had learned from other parties that the act was done by the person he had named, it is the duty of the court to strike out the testimony offered in chief, as hearsay evidence.

*Negligence—Master and servant—Mines and mining—Safe appliances.*

4. Where in an action to recover damages for personal injuries, it

appears that the negligence complained of was the leaving of a trolley line unguarded, and the evidence is that the electric system was of the usual and ordinary character in general use in mines, and that it had been properly installed, it is reversible error for the trial judge to charge that "it is the province of this jury to use your judgment as reasonable men, as to what is a proper installation and construction of a dangerous appliance under all the circumstances and conditions as testified to you, in that tunnel."

5. An employer is not bound to provide the safest machinery or the newest and most approved appliances. He has performed his duty in this respect when he furnishes those of the ordinary character in general use in the business in which he is engaged.

6. In an action against the owner of a mine to recover damages for personal injuries alleged to have been caused by leaving a trolley line unguarded at a dangerous place in the mine, where the evidence is contradictory as to whether the mine foreman, or the superintendent, had charge of the electric system, the case is for the jury.

Argued Feb. 13, 1911. Appeal, No. 19, Jan. T., 1911, by defendant, from judgment of C. P. Schuylkill Co., Nov. T., 1906, No. 67, on verdict for plaintiff in case of Paul Pauza *v.* Lehigh Valley Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before BRUMM, J. See Reeder v. Lehigh Valley Coal Co., ante, p. 563.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiff for $7,250. Defendant appealed.

*Errors assigned* were various rulings on evidence and instructions.

*Daniel W. Kaercher,* with him *Samuel H. Kaercher,* and *Frank W. Wheaton,* for appellant.

*A. D. Knittle,* for *appellee.*

OPINION BY MR. JUSTICE ELKIN, May 17, 1911:

We have concluded that there must be a reversal in this

case on other grounds and do not think it necessary to decide whether the court erred in admitting the mortality tables after the case was closed and arguments to the jury made. When the case is again tried the mortality tables may be offered in evidence in a regular way and at a proper time. When such tables are introduced, it is the duty of the trial judge to carefully guard the effect to be given them by the jury. Unless this is done in a very pointed and direct way by the court, the jury may be misled as to the value and weight to be attached to this character of evidence. The important fact for the jury to determine is the life expectancy of the injured party. This depends more upon his prior state of health, character and habits, perils of employment, personal characteristics, and other circumstances surrounding his own life, than it does upon the average expectancy of other lives based upon mortality tables. The trial judge should instruct the jury that these tables are not to be accepted as establishing the expectancy of the life of the injured party, but only as an aid in arriving at what that expectancy might be in view of all the conditions surrounding the particular life in question. It is not sufficient to instruct the jury that the tables are some aid but not conclusive in determining the life expectancy of the injured party. All the circumstances affecting the probable duration of life disclosed by the evidence should be called to the attention of the jury in order that they may have an intelligent understanding of what their duty is in determining the life expectancy in the particular case submitted to them. The duty of a trial judge in treating evidence of this character is pointed out in Steinbrunner v. Railway Co., 146 Pa. 504; Campbell v. York, 172 Pa. 205; Kerrigan v. Railroad Co., 194 Pa. 98; Seifred v. Railroad Co., 206 Pa. 399.

We think the learned trial judge erred in not striking out the testimony of the plaintiff called to our attention by the third assignment of error. This witness testified in chief that the keg of powder carried by James Smith was exploded by coming in contact with the trolley wire.

On cross-examination he admitted that he did not know James Smith but that he had afterwards learned from other parties that it was James Smith who carried the keg of powder that was exploded. This was clearly hearsay evidence and if these facts had appeared when it was offered in chief, it would have been the duty of the court to exclude it. When these facts were subsequently disclosed it was equally his duty to strike it out when the motion was made to do so. It was error to refuse this motion.

The instruction complained of in the fourth assignment is clearly erroneous. This instruction was based upon a wrong theory as to the duty of appellant in installing and maintaining an electric haulage system for the operation of its mines. The trial judge instructed the jury that, "it is the province of this jury to use your judgment, as reasonable men, as to what is a proper installation and construction of a dangerous appliance, under all the circumstances and conditions as testified to you, in. that tunnel." This instruction ignored every proper test of the measure of duty imposed on an employer in such cases and left it to the jury to use their best judgment in determining whether the electric haulage system had been properly installed. This is not the law. The employer is bound to furnish machinery and appliances reasonably safe for the use intended. Reasonable safety within the meaning of the law means that the machinery and appliances furnished must be of the usual and ordinary kind adopted by those in the same kind of business. An employer is not even bound to provide the safest machinery or the newest and most approved appliances. He has performed his duty in this respect when he furnishes those of the ordinary character in general use in the business in which he is engaged: Ford v. Anderson, 139 Pa. 261; Kehler v. Schwenk, 144 Pa. 348; Keenan v. Waters, 181 Pa. 247. The rule is very concisely and clearly stated by Mr. Justice MITCHELL in Titus v. Railroad Co., 136 Pa. 618, in the following language: "The unbending test of

negligence in methods, machinery, and appliances, is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed." The instruction to the jury complained of in the assignment now being considered utterly disregards the rule stated in the case just cited. It is not the province of the jury to set up a standard of their own as a test of negligence. They must be guided by the evidence, and the court should carefully instruct them as to the measure of duty which the law requires. In the case at bar the only evidence on the subject is that the electric haulage system of appellant was of the usual and ordinary character in general use in mines and that it had been properly installed. There was therefore no question of proper or improper installation to submit to the jury. The only question on this branch of the case for the jury was whether appellant was negligent in allowing the trolley wire to break loose from its fastenings and sag over the loaded cars of coal. This question has been discussed in the opinion just handed down in Reeder v. Coal Co., ante, p. 563, and will not be further considered here.

The ninth assignment raises the question whether appellant was relieved from liability upon the ground that the underground workings of the mine were in charge of a certified mine foreman. If the facts were as stated in the point, it should have been affirmed. But as we read the evidence the electric haulage system was not in charge of the mine foreman. At least this was a controverted question, and if so, it was for the jury to say whether the superintendent or the mine foremen had charge of and exercised supervision over the electric haulage system.

When the case is again tried all the facts bearing upon this important question should be fully developed so that the court, or the jury, as the facts warrant, may properly determine who was in charge. We have considered this question more fully in the Reeder case and all that was said there applies with equal force here.

We cannot agree, as is contended for appellant, that a verdict should have been directed for defendant, or that judgment non obstante should have been entered upon the whole record. For the reasons stated in the Reeder case in addition to what has been said in the case at bar it would have been error to have withdrawn the case from the jury.

When the case is again tried it will be the duty of the trial judge to carefully instruct the jury as to the proper measure of damages, especially as relates to the anticipation of future payments. When future payments are to be capitalized in a verdict, the plaintiff is only entitled to their present worth and the jury should have such guidance from the court as will give them an intelligent understanding of what this means: Goodhart v. Railroad Co., 177 Pa. 1; Wilkinson v. Northeast Boro., 215 Pa. 486.

The second, second and a half, third and fourth assignments of error are sustained.

Judgment reversed and a venire facias de novo awarded.